IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | * |
| PERFORM GROUP, LLC,, | * CASE NO. 1:21-bk-01345-HWV |
| Debtor. | * CHAPTER 7 |
| AFCO Credit Corporation, | * |
| Movant | * |
| v. | * |
| Perform Group, LLC | * |
| And | * |
| Steven M. Carr, Trustee, | * |
| Respondents | * |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**LIMITED OBJECTION OF PEOPLESBANK, A CODORUS
VALLEY COMPANY, TO EMERGENCY MOTION BY AFCO
<u>CREDIT CORPORATION FOR RELIEF FROM AUTOMATIC STAY</u>**

PeoplesBank, A Codorus Valley Company (the "Bank"), respectfully submits this limited objection to the Emergency Motion of AFCO Credit Corporation, With Concurrence, For Relief from the Automatic Stay to Cancel Insurance Policies of Debtor or, In the Alternative, for Adequate Protection [Doc. 16-1] (the "AFCO Motion") filed by AFCO Credit Corporation ("AFCO").

<u>**Summary of Bank's Position**</u>

The Bank does not contest AFCO's entitlement to relief from the automatic stay to cancel the insurance policies of Perform Group, LLC (the "Debtor") that AFCO financed and to apply unearned insurance premiums to the Debtor's obligations to AFCO if, as alleged in the AFCO

Motion, the Debtor is in default in payment of those obligations. However, AFCO requests relief from the stay to cancel the policies that it financed effective as of June 1, 2021, two weeks before the Debtor filed its Chapter 7 petition and four weeks before AFCO filed the AFCO Motion. As to the "Property Policy," as defined below, granting such relief is not permitted under 40 <u>Pennsylvania Statutes</u> Section 3403 and would result in property of the Debtor's estate and the Bank's collateral being uninsured for any casualty losses that may have occurred during a substantial period of time before either the Bank or Steven M. Carr, Trustee (the "Trustee") could have known that there was any need to procure substitute insurance coverage, let alone acted to procure such coverage. To avoid possible irreparable injury to the Bank and comply with 40 <u>Pennsylvania Statutes</u> Section 3403, AFCO should only be granted relief from the automatic stay to cancel the Property Policy that it financed effective as of the earlier of: (a) the date on which substitute coverage on the Bank's collateral, force placed by the Bank, becomes effective; or (b) fifteen days after the notice required by that statute has been given.

## Factual Background

The Bank extended a revolving line of credit in the maximum principal amount outstanding at any one time of Nine Million Dollars ($9,000,000.00) (the "Line") to the Debtor and the Debtor's principal, Leroy A. King, Jr. ("King"), jointly. The obligations of the Debtor and King to the Bank under the Line are secured by, among other things, all of the Debtor's equipment and inventory pursuant to a Security Agreement dated September 6, 2019 (the "Security Agreement") and two parcels of real property owned by King on which the Debtor operated before filing its petition, 333 East Seventh Avenue, York, Pennsylvania ("Seventh") and 5130 East Prospect Road, York, Pennsylvania ("Prospect") pursuant to an Open-End Mortgage and Security Agreement dated April 13, 2018 and recorded with the York County,

- 2 -

Case 1:21-bk-01345-HWV    Doc 31    Filed 07/09/21    Entered 07/09/21 13:44:15    Desc
Main Document    Page 2 of 8

Pennsylvania Recorder of Deeds on April 17, 2018 as Instrument Number 2018015470 (the "King Mortgage").

According to the Debtor's Schedules, as of the petition date, the Debtor owned inventory valued at Four Million Nine Hundred Ninety-Five Thousand Two Hundred Twenty-Four Dollars ($4,995,224.00), office equipment and furniture valued at One Million Three Hundred Seventy-Eight Thousand Four Hundred Thirty-Three Dollars ($1,378,433.00), and manufacturing equipment valued at Two Million Six Hundred Thirty-Three Thousand Two Hundred Twenty-Four Dollars ($2,633,224.00). The Bank has been advised by King's counsel that Seventh is currently listed for sale at Seven Million One Hundred Twenty-Five Thousand Dollars ($7,125,000.00) and Prospect is listed for sale at Three Million Nine Hundred Thousand Dollars ($3,900,000.00).

The Security Agreement and the King Mortgage require the Debtor and King to maintain casualty insurance on the Bank's collateral. To demonstrate compliance with that requirement, the Debtor provided the Bank with Evidence of Property Insurance reflecting that the Debtor maintained The Travelers Indemnity Company Policy No. KTK-CMB-4K53876-A-21 (the "Property Policy") for a period of January 1, 2021 through January 1, 2022 insuring real and personal property for Fifty Million Dollars ($50,000,000.00). The Evidence of Insurance notes that the Bank is a "loss payee/mortgagee" and provides that "Should any of the above described policies be cancelled before the expiration date thereof, notice will be delivered in accordance with the policy provisions."

On June 29, 2021, AFCO filed the AFCO Motion seeking authority to cancel the Property Policy and Zurich American Insurance Company Policy No. WC651007031 (the

- 3 -

Case 1:21-bk-01345-HWV    Doc 31    Filed 07/09/21    Entered 07/09/21 13:44:15    Desc
Main Document    Page 3 of 8

"Workers Comp Policy") effective as of June 1, 2021.[1]  The Bank had not received any notice of the cancellation of the Property Policy as of June 29, 2021 and the AFCO Motion was the first signal that the Bank received that the insurance on its collateral might be at risk.

The Security Agreement and the King Mortgage both provide that the Bank may force place insurance on its collateral if the Debtor and King fail to maintain the required insurance coverage.  However, insurance force placed by the Bank would insure only the Bank's interest in the collateral.  It would not provide any insurance covering the Debtor's estate's interest in inventory and equipment or King's interest in Seventh or Prospect to the extent that there is any equity in those assets beyond what the Bank is owed.  Consequently, on the same day that the AFCO Motion was filed, counsel to the Bank contacted the Trustee, provided him with the Evidence of Property Insurance describing the coverage afforded by the Property Policy, and encouraged him to procure replacement coverage on the Debtor's estate's property.  Counsel to the Bank advised the Trustee that funds are on deposit in the Debtor's frozen accounts with the Bank that might be used to pay for replacement insurance.  Also on June 29, 2021, counsel to the Bank contacted King's counsel and encouraged him to have King procure replacement coverage on Seventh and Prospect.

On July 2, 2021, counsel to the Bank sent the Trustee and counsel to King an e-mail advising them that the Bank would force place insurance on its collateral if it did not receive proof on or before July 7, 2021 that the Trustee and/or King had procured replacement coverage. In that e-mail, counsel to the Bank informed them that "(a) force placed insurance is expensive; (b) the cost of force placed insurance will be added to the Bank's claims against the Debtor and King to the extent permitted by applicable law; and (c) insurance force placed by the Bank will cover only the Bank's interests in the assets of the Debtor and King."  Counsel to the Bank

---

[1] The Bank takes no position with respect to cancellation of the Workers Comp Policy as cancellation of

emphasized in bold type that "**Force placed insurance procured by the Bank will not insure the interests of the Debtor's estate in the property thereof or King's interests in the real property encumbered by the Open End Mortgage and Security Agreement.**"

The Bank did not receive any evidence that replacement coverage had been procured by the close of business on July 7, 2021. Consequently, the Bank began the process of force placing insurance on its collateral on July 8. Unfortunately, because the amount of coverage needed exceeds the amount of coverage afforded by the Bank's blanket policy, underwriting is required before a new policy for replacement coverage can be obtained. That process is ongoing. The Bank has not sought to procure any workers' compensation insurance to replace the Workers Comp Policy.

### **Retroactive Cancellation Is Unfair and Violates Pennsylvania Law**

As soon as the Bank learned that cancellation of the Property Policy was imminent, it acted promptly to have the Trustee and/or King procure replacement coverage or, failing that, procure coverage itself. Permitting AFCO to cancel the Property Policy effective as of a date nearly a full month before the Bank had any reason to know that it was at risk of losing the insurance coverage on valuable collateral would potentially subject the Bank to harm against which there is nothing it could have done to protect itself. Pennsylvania law does not permit such an unfair result.

The Property Policy covers commercial property and casualty risk. 40 Pennsylvania Statutes Section 3402 provides that "Canceling in midterm a policy of insurance covering commercial property and casualty risks is prohibited for any reason other than the following:" Permitted reasons for mid-term cancellation of such a policy include that "The insured has failed to pay a premium when due, whether the premium is payable directly to the company or its

---

that policy does not implicate the Bank's collateral.

agents *or indirectly under a premium finance plan* or extension of credit." 40 P.S. § 3402(5) (Emphasis added).

When mid-term cancellation of a policy covering commercial property and casualty risk is permitted, 40 <u>Pennsylvania Statutes</u> Section 3403 dictates that "The midterm cancellation or nonrenewal notice shall be forwarded by registered or first class mail or delivered by the insurance company directly to the named insured or insureds." 40 P.S. § 3403(a)(1). When the basis for mid-term cancellation is that "The insured has failed to pay a premium when due, whether the premium is payable directly to the company or its agents or indirectly under a premium finance plan or extension of credit," "the prescribed written notice of cancellation shall be forwarded directly to the named insured *at least 15 days in advance of the effective date of termination*." 40 P.S. § 3403(a)(3)(ii) (Emphasis added). The prescribed written notice of cancellation must be "clearly labeled 'Notice of Cancellation' or 'Notice of Nonrenewal'," 40 P.S. § 3403(a)(4), "state the specific reasons for the cancellation or nonrenewal [and] provide sufficient information or data for the insured to correct the deficiency," 40 P.S. § 3403(a)(5), and "state that, at the insured's request, the insurer shall provide loss information to the insured for at least three years or the period of time during which the insurer has provided coverage to the insured, whichever is less." 40 P.S. § 3403(a)(6).

> Until an insurer issues a nonrenewal or cancellation notice that complies with the provisions set forth in this act, insurance coverage will remain in effect. However, if the insured obtains replacement coverage, the noncomplying insurer's obligation to continue coverage ceases.

40 P.S. § 3403(b).

AFCO does not allege in the AFCO Motion that notice complying with 40 <u>Pennsylvania Statutes</u> Section 3403 was given to anyone more than 15 days before the proposed June 1 cancellation date. Indeed, since AFCO alleges that the default entitling it to relief from the

- 6 -

automatic stay is the Debtor's failure to make payments due on June 1, 2021, it is highly unlikely that a cancellation notice was given in advance of that default. Moreover, because the Evidence of Property Insurance specified that notice would be given to the Bank as "loss payee/mortgagee," such a notice, if it was given, should have been given to the Bank. The Bank has received no such notice.

### Conclusion

Pennsylvania law prohibits cancellation of an insurance policy covering commercial property and casualty loss before either a notice complying with 40 Pennsylvania Statutes Section 3403 has been given or replacement coverage has been procured. As there is no evidence that notice of cancellation meeting the requirements of the statute was ever given, AFCO should not be granted relief from the automatic stay to cancel the Property Policy effective as of June 1, 2021 as it requests in the AFCO Motion, but effective as of the earlier of: (a) the date on which substitute coverage on the Bank's collateral, force placed by the Bank, becomes effective; or (b) fifteen days after the notice required by 40 Pennsylvania Statutes Section 3403 has been given.

Respectfully submitted,

/s/ *William L. Hallam*
William L. Hallam, Bar No. 85647
Joshua Dylan Bradley, Bar No. 313308
Rosenberg Martin Greenberg, LLP
25 S. Charles Street, 21st Floor
Baltimore, MD 21201
(410) 727-6600 (phone)
(410) 727-1115 (fax)
whallam@rosenbergmartin.com
jbradley@rosenbergmartin.com

*Attorneys for PeoplesBank,*
*A Codorus Valley Company*

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 9th day of July, 2021, a copy of the foregoing Limited Objection of PeoplesBank, A Codorus Valley Company, to Emergency Motion of AFCO Credit Corporation, With Concurrence, For Relief from the Automatic Stay was served through the CM/ECF System and via first-class mail on the following:

>Joel L. Perrell, Jr., Esquire
>Miles & Stockbridge, P.C.
>100 Light Street
>Baltimore, MD 21202
>
>Lawrence V. Young, Esquire
>CGA Law Firm
>135 North George Street
>York, PA 17401
>
>Steven M. Carr, Esquire
>Ream Carr Markey Woloshin & Hunter LLP
>119 East Market Street
>York, PA 17401
>
>Office of the U.S. Trustee
>Middle District of Pennsylvania
>228 Walnut Street, Suite 1190
>Harrisburg, PA 17101

          /s/ *William L. Hallam*
          William L. Hallam

4812-3663-8449, v. 1

- 8 -

Case 1:21-bk-01345-HWV    Doc 31    Filed 07/09/21    Entered 07/09/21 13:44:15    Desc
Main Document    Page 8 of 8