IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | |
| | * | |
| PERFORM GROUP, LLC, | * | CASE NO. 1:21-bk-01345-HWV |
| | * | |
| Debtor. | * | CHAPTER 7 |
| | * | |
| STEVEN M. CARR, TRUSTEE, | * | |
| | * | |
| Movant | * | |
| | * | |
| v. | * | |
| | * | |
| PEOPLESBANK, | * | |
| | * | |
| Respondent | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**LIMITED OBJECTION OF PEOPLESBANK, A CODORUS VALLEY COMPANY, TO MOTION TO SELL INVENTORY AND INTELLECTUAL PROPERTY FREE AND CLEAR OF LIENS AND ENCUMBRANCES PURSUANT TO 11 U.S.C. §363**

PeoplesBank, A Codorus Valley Company (the "Bank"), submits this Limited Objection to the Motion to Sell Inventory and Intellectual Property Free and Clear of Liens and Encumbrances Pursuant to 11 U.S.C. §363 [Doc 54] (the "IP Sale Motion") filed by Steven M. Carr, Trustee (the "Trustee").

**Summary of Bank's Position**

The Bank is not opposed to the Trustee selling the assets of Perform Group, LLP (the "Debtor") in which it holds security interests and appreciates the Trustee's diligence in pursuing such sales by, among other things, engaging SC&H Group, Inc. ("SC&H") as Sales Agent/Advisor to assist him. However, the IP Sale Motion and the Motion to Sell Debtor's Personalty Free and Clear of Liens and Encumbrances Pursuant to 11 U.S.C. §363 [Doc 56] (the "Auction Sale Motion") filed on the same day leave many unanswered questions, conflict with

one another in certain respects, and conflict with what the Bank understands SC&H envisions happening. The Bank hopes that the issues can be ironed out with the Trustee and SC&H by a stipulation without delaying the sale process. However, as it may not be possible to resolve the issues before the deadline set by the Court for objecting to the IP Sale Motion and the IP Sale Motion is unacceptable in its current form, the Bank is filing this Limited Objection.

## Procedural Background

### A.  What the Motions Propose

The Trustee filed the IP Sale Motion on August 12, 2021.  The Trustee recites in the Motion that he has "received an offer from RevDance Parent Holding Corp, to purchase a portion of the Debtor's intellectual property and inventory, as more fully itemized in the Asset Purchase Agreement between the parties submitted as an Exhibit to this Motion, for the sum of $250,000.00."  IP Sale Motion, ¶ 6.  The IP Sale Motion says that "Normal and customary sale expenses, including but not limited to the broker's commission and approved costs and expenses will be first paid from the proceeds generated from the sale," Id., § 9, and that "Trustee will carve out $12,500.00 from the sale proceeds to be held for the benefit of unsecured creditors, including administrative expenses."  Id., § 10.  The Trustee "submits that the highest offer that may be generated at the sale contemplated herein and in conformity with the aforesaid procedure will represent the then current highest and best offer for the subject assets."  Id., § 11.  There is no mention in the IP Sale Motion of any opportunity by the Bank to credit bid.  The Court has scheduled a hearing on the IP Sale Motion for September 14, 2021.  [Doc 55].

The Auction Sale Motion was filed on the same day as the IP Sale Motion.  Footnote 1 emphasizes that "The instant Motion does not include that inventory, intellectual property and

Case 1:21-bk-01345-HWV    Doc 64    Filed 08/19/21    Entered 08/19/21 13:56:20    Desc
Main Document      Page 2 of 10

other personalty that is subject to a separate Motion to Sell to RevDance Parent Holding Corp."

It states that SC&H has marketed the assets of the Debtor for sale in five "lots" comprised of:

Lot 1-All assets;

Lot 2-Intellectual Property;

Lot 3-Finished Goods Inventory;

Lot 4-Raw Materials Inventory;

Lot 5-Vehicles

Auction Sale Motion, § 8. The Auction Sale Motion says that SC&H "has established a deadline of September 14, 2021 wherein any interested party may submit an offer in the form of an Asset Purchase Agreement, a 10% deposit, as well as financial information demonstrating the ability to close." Auction Sale Motion, § 10. "In the event that there are competing qualified offers for any of the assets, [SC&H] will contact all offerors and invite them to participate in a 'mini-auction' in order to determine the highest and best offer for the appropriate assets." Id., § 11. The Auction Sale Motion says that "All secured creditors shall have the right to credit bid as to its allowed secured claim…" Id., at § 12. "Upon so determining, at the Final Hearing on September 21, 2021, the Trustee will present the highest and best offer(s) and request an Order approving such Buyer(s)." Id., at § 12.

The Auction Sale Motion, like the IP Sale Motion, says that "Normal and customary sale expenses, including but not limited to the broker's commission and approved costs and expenses will be first paid from the proceeds generated from the sale," Id., § 16. Slightly differently than the IP Sale Motion, the Auction Sale Motion says that "Trustee will carve out $50,000.00 plus 5% of any excess sales over $1,000,000.00 from the sale proceeds to be held for the benefit of unsecured creditors, including administrative expenses." Id., § 17. Paragraph 18 of the Auction

Sale Motion, says that the Trustee "submits that the highest offer that may be generated at the sale contemplated herein and in conformity with the aforesaid procedure will represent the then current highest and best offer for the subject assets." The Court has set a hearing on the Auction Sale Motion for September 21, 2021. [Doc 57].

**B. What SC&H Expects**

According to documentation provided by the Trustee, SC&H has established a deadline of September 14, 2021 for interested parties to submit bids by providing all parties identified as potential purchasers with a document entitled "Notice of Bid Procedures- Perform Group, LLC" (the "Procedures Notice"). The Procedures Notice makes no reference to any creditor having a right to credit bid. It does provide that "Any person, including a creditor may participate at the Auction," but only "upon proper application to the Sales Agent." The Procedures Notice provides that:

> In order to be considered, bids on the assets ("Assets") of Perform Group, LLC must be irrevocable, free from any contingencies, and received by the Chapter 7 Trustee, Steven M. Carr ("Trustee") and Hank Waida at SC&H Capital ("Sales Agent") on or before September 14, 2021 at 4:00 PM Eastern Standard Time. Bids should be submitted via a form asset purchase agreement ('Asset Purchase Agreement') provided by the Sales Agent… Proposed bidders must provide financial information demonstrating the ability to close, satisfactory to the Sales Agent… All bids must be in writing on a marked-up version of the Asset Purchase Agreement and accompanied by a good faith deposit equal to 10% of the bid, in the form of a wire transfer or certified funds… Provided the Trustee agrees to terms set forth in Asset Purchase Agreements submitted by qualified bidders, the auction will be held on September 16, 2021 at 10:00 AM Eastern Time.

SC&H has advised counsel to the Bank by telephone that SC&H expects the offer that is the subject of the IP Sale Motion to be subject to higher and better offers at the "mini-auction" described in the Auction Sale Motion.

- 4 -

## The Bank Has Not Consented to Carve-Outs or Surcharges of Collateral

The Trustee did not discuss with the Bank the carve-outs for the benefit of unsecured creditors or the payment of sale expenses, including SC&H's commission from the proceeds of sale before the Bank's claim is paid provided for in the IP Sale Motion or the Auction Sale Motion before filing those Motions. Although the Bank may well consent to them since it agrees that the Trustee should sell the Debtor's assets, because of the lack of clarity of how the sale process is intended to unfold discussed below, the Bank has not consented to date and may not consent.

As a general rule, "administrative expenses are paid from the unencumbered assets of a bankruptcy estate rather than from secured collateral." *In re JKJ Chevrolet, Inc.*, 26 F.3d 481, 483 (4th Cir. 1994); see also, *In re Guteryl Special Steel Corporation*, 316 B.R. 843, 853 (Bankr. W.D. Pa. 20014) (administrative expenses "normally are charged only against un encumbered estate assets."). According to the Auction Sale Motion, the Debtor owns unspecified unencumbered vehicles. Auction Sale Motion, ⁋ 5. Yet the IP Sale Motion seems to contemplate paying the entire commission of SC&H from the proceeds of the proposed sale to RevDance Parent Holding Corp. of assets in which the Bank holds perfected security interests. Moreover, both the IP Sale Motion and the Auction Sale Motion provide for "approved costs and expenses" to be paid from the proceeds of sale without any indication as to what they may be or how they may become "approved."

Collateral may be surcharged without a secured creditor's consent. However, for a surcharge to be imposed upon a secured creditor's collateral without its consent under 11 U.S.C. §506©, there must be a showing that "(1) the expenditures are reasonable and necessary to the preservation or disposal of the property and (2) the expenditures provide a direct benefit to the

secured creditors." *In re C.S. Associates,* 29 F.3d 903, 906 (3rd Cir. 1994). As the Third Circuit said in *In re C.S. Associates:*

Courts have narrowly construed § 506(c) to encompass only those expenses that are "specifically incurred for the express purpose of ensuring that the property is preserved and disposed of in a manner that provides the secured creditor with a maximum return on the debt and also apportions those costs to the secured creditor who, realistically, is assuming the asset." 29 F.3d at 907. Expenses incurred disposing of unencumbered vehicles do not meet that description.

If the Bank does not consent to the proposed carve-outs and surcharges proposed in the IP Sale Motion and the Auction Sale Motion, the Court should not approve them unless the Trustee presents evidence sufficient to comply with the Third Circuit's requirements for involuntary surcharges.

## The Sale Process Is Unclear

The IP Sale Motion says that the Trustee "submits that the highest offer that may be generated at the sale contemplated herein and in conformity with the aforesaid procedure will represent the then current highest and best offer for the subject assets." However, there is no "aforesaid procedure" in the IP Sale Motion. Although SC&H expected the offer described in the IP Sale Motion to be subject to higher and better offers, the Auction Sale Motion expressly states that the assets that are the subject of the IP Sale Motion are not covered by the Auction Sale Motion. Moreover, the Court is scheduled to approve the sale that is the subject of the IP Sale Motion (the "RevDance Sale") on the deadline set forth in the Procedures Notice for prospective bidders to qualify for the "mini-auction" described in the Auction Sale Motion to be held two days later on September 16, 2021. An offer approved at a hearing on September 14,

- 6 -

2021 cannot be subjected to higher and better offers at an auction held two days later under procedures described in an Auction Sale Motion that expressly states that it does not cover the assets that are the subject of the IP Sale Motion.

Moreover, the IP Sale Motion does not refer at all to the possibility of a credit bid by the Bank or any other secured creditor.  The Auction Sale Motion does, but the Auction Sale Motion expressly does not cover the assets that are the subject of the IP Sale Motion.  To further complicate the issue, the Procedures Notice requires a "proper application" for a secured creditor to participate in the auction without explaining what constitutes such an application.  Since only "qualified bids" are to be considered at the "mini-auction" and the Procedures Notice specifies that bids must be submitted by no later than September 14, 2021 to be qualified, it appears that the Bank would not be allowed to participate in the auction unless it submitted a credit bid or bids on or before September 14, 2021 without knowing what bids might be made by other bidders for any or all of the five identified "Lots" of assets or "partial lots in order to maximize the recovery."  Auction Sale Motion, ¶ 9.

### **What Is Being Sold Is Unclear**

The IP Sale Motion says that the Trustee has "received an offer from RevDance Parent Holding Corp, to purchase a portion of the Debtor's intellectual property and inventory, as more fully itemized in the Asset Purchase Agreement between the parties submitted as an Exhibit."  It does not mention any sale of machinery, equipment, furnishings, or fixtures.  However, in addition for providing for the sale of all intellectual property and inventory related to 29 "Acquired Brands," Section 2.1 of the Asset Purchase Agreement attached to the IP Sale Motion as an Exhibit provides for RevDance Parent Holding Corp. to acquire all "machinery, equipment, tools, furniture, fixtures, furnishings, leasehold improvements, goods and other tangible personal

Case 1:21-bk-01345-HWV    Doc 64    Filed 08/19/21    Entered 08/19/21 13:56:20    Desc
Main Document      Page 7 of 10

property related to the Acquired Brands, including but not limited to…All contents of the 'Sample Making Room' at 333 E 7th Avenue, York, PA (Main Facility), specifically including all machinery and equipment in such room." There is no further description of the machinery, equipment, and furnishings that the Trustee proposes to sell, but depending on whether 333 East Seventh Avenue is "#PT3" or "#PT4," as those designations are used in the Debtors' Schedules, what the Trustee is proposing to sell is comprised of some or all of a universe of equipment and furniture having a scheduled value between $434,644 (#PT4) and $3,395,516 (#PT3).

Furthermore, the RevDance Sale scheduled to be approved before the "mini-auction" proposed in the Auction Sale Motion prevents at least three, and possibly four, of the "Lots" proposed to be offered for sale at auction from being available for sale at the auction. Bidders cannot buy "All assets," all "Intellectual Property," or all "Finished Goods Inventory" because some assets from each of those categories will already be subject to the approved RevDance Sale. If all "goods related to the Acquired Brands" include raw materials, all "Raw Materials Inventory" will not be available for sale at auction either.

**Conclusion**

The Bank does not oppose a sale of the Debtor's assets by the Trustee. If what is being sold and how it is being sold can be resolved and clarified fast enough, the Bank does not oppose the sale of the Debtor's assets on the timetable proposed in the Auction Sale Motion. However, entry of the proposed Order granting the IP Sale Motion will leave all parties, including prospective bidders, navigating through a confusing process and likely lead to disputes. Unless and until the ambiguities and inconsistencies discussed above are resolved, the IP Sale Motion should not be granted.

Dated: August 19, 2021                              Respectfully submitted,

                                                    /s/ *William L. Hallam*
                                                    William L. Hallam, Bar No. 85647
                                                    Joshua D. Bradley, Bar No. 313308
                                                    Rosenberg Martin Greenberg, LLP
                                                    25 S. Charles Street, 21st Floor
                                                    Baltimore, MD  21201
                                                    (410) 727-6600 (phone)
                                                    (410) 727-1115 (fax)
                                                    whallam@rosenbergmartin.com

                                                    *Attorneys for PeoplesBank,*
                                                    *A Codorus Valley Company*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 19th day of August, 2021, a copy of the foregoing Limited Objection of PeoplesBank, A Codorus Valley Company, to Motion to Sell Inventory and Intellectual Property Free and Clear of Liens and Encumbrances Pursuant to 11 U.S.C. §363 was served through the CM/ECF System on all parties registered to receive service via such system in the above-captioned case and via first-class mail on the following:

Lawrence V. Young, Esquire
CGA Law Firm
135 North George Street
York, PA 17401

Steven M. Carr, Esquire
Ream Carr Markey Woloshin & Hunter LLP
119 East Market Street
York, PA 17401

Office of the U.S. Trustee
Middle District of Pennsylvania
228 Walnut Street, Suite 1190
Harrisburg, PA 17101

/s/ *William L. Hallam*
William L. Hallam

4837-3646-2838, v. 1